**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KATHLEEN M. BENZ,<br>1121 Tabor Place<br>Philadelphia, PA 19111<br><br>Plaintiff,<br><br>v.<br><br>CORA SERVICES, INC.,<br>8540 Verree Road<br>Philadelphia, PA 19111<br><br>Defendant. | CIVIL ACTION<br><br>No. ____________________<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Kathleen M. Benz, by and through her undersigned counsel, brings this Complaint against Defendant CORA Services, Inc., and in support thereof avers as follows.

## I. NATURE OF THE ACTION

1. This is an action for damages and other relief arising from Defendant's termination of Plaintiff's employment on the day she returned from medical leave for a fractured shoulder. Plaintiff was sixty-five years old, had more than thirty years of payroll experience, and had never been disciplined. Defendant has described the termination at different times as a retirement, as the elimination of a superfluous position, and as the result of performance deficiencies. Plaintiff did not retire, and the payroll duties she had performed were reassigned to a substantially younger male employee whom Defendant hired shortly before her injury. Plaintiff brings claims under the Family and Medical Leave Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, and the Pennsylvania Human Relations Act.

## II. PARTIES

2. Plaintiff Kathleen M. Benz ("Plaintiff" or "Ms. Benz") is an adult individual residing at 1121 Tabor Place, Philadelphia, Pennsylvania 19111.

3. Plaintiff was born in 1960 and was sixty-five years old at the time of the events giving rise to this action.

4. Defendant CORA Services, Inc. ("Defendant" or "CORA") is, upon information and belief, a Pennsylvania nonprofit corporation with its principal place of business at 8540 Verree Road, Philadelphia, Pennsylvania 19111.

5. CORA is a human services organization that provides behavioral health, social services, and community-based programs to children, families, and individuals in the Philadelphia region. CORA employs approximately 550 employees.

6. At all times relevant to this Complaint, CORA was Plaintiff's "employer" within the meaning of the Family and Medical Leave Act, 29 U.S.C. § 2611(4), the Americans with Disabilities Act, 42 U.S.C. § 12111(5), the Age Discrimination in Employment Act, 29 U.S.C. § 630(b), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), and the Pennsylvania Human Relations Act, 43 P.S. § 954(b).

7. At all times relevant to this Complaint, CORA acted through its agents, servants, and employees, each of whom acted within the course and scope of his or her employment and authority, including Chief Financial Officer Laura Schepps, Vice President of Talent and Culture Sharyn Streets, Benefit and Wellness Coordinator Myra Crissey, and Payroll Manager Carey Palmer.

## III. JURISDICTION AND VENUE

8. This Court has original subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343, 29 U.S.C. § 2617(a)(2), 42 U.S.C. § 12117(a), 29 U.S.C. § 626(c), and 42 U.S.C. § 2000e-5(f)(3).

9. This Court has supplemental jurisdiction over Plaintiff's claims under the Pennsylvania Human Relations Act pursuant to 28 U.S.C. § 1367(a), because those claims arise from the same nucleus of operative facts as Plaintiff's federal claims and form part of the same case or controversy.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this District and because all of the events and omissions giving rise to Plaintiff's claims occurred in Philadelphia County, Pennsylvania, within this District.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), docketed as EEOC Charge No. 530-2026-00321, alleging discrimination on the basis of disability, age, and sex, and retaliation. Plaintiff's Charge was dual-filed with the Pennsylvania Human Relations Commission ("PHRC").

12. On September 1, 2026, the EEOC issued Plaintiff a Notice of Right to Sue. This Complaint is filed within ninety days of Plaintiff's receipt of that Notice.

13. More than sixty days have elapsed since Plaintiff filed her Charge with the EEOC. 29 U.S.C. § 626(d)(1).

14. More than one year has elapsed since Plaintiff filed her complaint with the PHRC, and the PHRC has not entered into a conciliation agreement to which Plaintiff is a party. 43 P.S. § 962(c)(1).

15. Plaintiff's claims under the Family and Medical Leave Act are timely under 29 U.S.C. § 2617(c).

16. Plaintiff has satisfied all conditions precedent to the filing of this action.

## V. FACTUAL ALLEGATIONS

17. Plaintiff is a payroll professional with more than thirty years of experience in payroll administration and more than ten years of experience in human resources functions. She holds a payroll certification and has participated in multiple payroll system implementations.

18. On or about August 29, 2022, CORA hired Plaintiff as its Payroll Administrator. CORA's then-Chief Financial Officer recruited Plaintiff away from another employer for the position.

19. As Payroll Administrator, Plaintiff was responsible for all aspects of processing and submitting CORA's bi-weekly payroll for approximately 550 employees, including post-payroll audits, benefits reconciliations, journal entries, year-end reporting, and serving as CORA's point of contact for employee payroll questions. Until March 2025, Plaintiff was the only employee CORA assigned to payroll.

20. In or around July 2023, CORA implemented a new payroll, timekeeping, and human resources information system (UKG Pro and UKG Workforce Management). Plaintiff served on the implementation team and was responsible for working directly with the vendor to identify and resolve issues affecting payroll. The implementation was successful, and CORA's payroll continued to be processed accurately and on time.

21. Each of Plaintiff's payroll registers was reviewed and approved by CORA's senior leadership before the payroll was released.

22. When CORA's Accounts Payable Clerk unexpectedly passed away, Plaintiff voluntarily assumed additional accounts payable functions to maintain the continuity of CORA's operations.

23. Plaintiff received compliments on her work from CORA's Chief Financial Officer, received a bonus after approximately her first year of employment, and received compensation increases during her tenure.

24. In nearly three years of employment, Plaintiff never received a written warning, a documented counseling, a performance improvement plan, a negative performance evaluation, or any other form of discipline.

25. CORA's Employee Handbook provides for annual written performance evaluations and for a five-step progressive discipline procedure under which performance concerns are documented and placed in the employee's personnel file. No such documentation exists as to Plaintiff, because no such concern was ever raised with her.

26. In November 2023, Laura Schepps became CORA's Chief Financial Officer, and Plaintiff began reporting to her. In May 2024, CORA hired Jessica Kennedy, who was thirty-eight years old, as Controller, and Plaintiff reported to Ms. Kennedy until CORA eliminated the Controller position on or about January 31, 2025, after which Plaintiff again reported to Ms. Schepps.

27. In or around November 2024, Ms. Schepps informed Plaintiff, who was then sixty-four years old, that CORA intended to create a new "Payroll Manager" position above her. Ms. Schepps told Plaintiff that the effect of the new position on Plaintiff's role would "become clear" once the position was filled and that it "could lead to the elimination" of Plaintiff's position.

28. CORA did not consider Plaintiff for the Payroll Manager position and did not invite her to apply for it, notwithstanding her three decades of payroll experience and her successful implementation of the payroll system that the position would oversee.

29. On or about March 24, 2025, CORA hired Carey Palmer as Payroll Manager. Mr. Palmer is male and, upon information and belief, is approximately fifteen years younger than Plaintiff. Mr. Palmer became Plaintiff's direct supervisor.

30. CORA did not hire Mr. Palmer to perform new or different work. Mr. Palmer was hired to perform the payroll function that Plaintiff had performed alone for nearly three years, and after Plaintiff's termination, he performed it.

31. After being told that the new position might eliminate her own, and as Mr. Palmer's hiring approached, Plaintiff felt that her work was being marginalized. On March 14, 2025, Plaintiff sent Ms. Schepps a short email stating that she had decided "to consider retirement," that she was "reviewing [her] finances," and that she might "possibly" retire on May 1, 2025. In the same email, Plaintiff told Ms. Schepps that she did not "feel as though [her] skills or hard work are valued at Cora."

32. Plaintiff's March 14, 2025 email was not a resignation. It set no definite date, it was expressly conditioned on a review of her finances, and it was prompted by the diminishment of her role that CORA itself had set in motion.

33. Two minutes later, Ms. Schepps forwarded Plaintiff's email to Sharyn Streets, CORA's Vice President of Talent and Culture, and wrote, "Let's discuss please. As long as Carey works out, this probably will be fine, but we may need to do an agreement sooner rather than later."

34. Ms. Schepps's email reflects that, as of March 14, 2025, CORA viewed Plaintiff's departure as contingent on whether Mr. Palmer "work[ed] out" as her replacement, and that CORA was already contemplating a separation "agreement" with Plaintiff "sooner rather than later."

35. On March 27, 2025, Ms. Streets emailed Plaintiff congratulating her "on your decision to retire" and asking to schedule a "retirement offboarding" meeting. Plaintiff responded the same day that she was "going to hold off" because she had gone to the Social Security Administration and there was not enough time to arrange her benefits and supplement her income. Ms. Streets acknowledged Plaintiff's withdrawal, responding, "Got it – not May 1st."

36. Plaintiff never provided CORA with a retirement date, never submitted a resignation, never participated in any offboarding, and never again told CORA that she intended to retire. CORA understood that Plaintiff had withdrawn the possibility of retirement and that she could not afford to retire. Plaintiff continued to work full time.

37. On April 6, 2025, Plaintiff fell and fractured her right proximal humerus, sustaining multiple fractures to the bones of her right shoulder and upper arm.

38. On April 7, 2025, Plaintiff was treated in the Emergency Department of Holy Redeemer Hospital. The treating physician diagnosed a right proximal humerus fracture and ordered that Plaintiff wear a sling, not lift with her right arm, not drive, and not return to work until cleared by an orthopedic specialist.

39. Plaintiff's injury substantially limited her in major life activities, including lifting, reaching, driving, performing manual tasks, typing, dressing and caring for herself, and sleeping, and substantially limited the operation of her musculoskeletal system. Plaintiff's arm was immobilized in a sling for weeks, her lower arm and hand swelled, and she experienced severe pain. Her orthopedic surgeon certified that she was incapacitated and unable to perform her

essential job functions for more than six weeks and referred her for physical therapy two to three times per week. Plaintiff continues to experience chronic pain and residual limitation in the use of her right arm and shoulder.

40. On April 7, 2025, Plaintiff telephoned Myra Crissey, CORA's Benefit and Wellness Coordinator in Human Resources, reported her injury and diagnosis, and requested FMLA paperwork so that she could take intermittent leave. Plaintiff explained that she was in extreme pain and could not work at full capacity, if at all. Plaintiff's husband hand-delivered the Emergency Department documentation to CORA's front desk the same day. Plaintiff also notified Ms. Schepps and Mr. Palmer of her injury by telephone.

41. Ms. Crissey did not provide Plaintiff with FMLA paperwork, did not provide Plaintiff with notice of her FMLA eligibility or of her rights and responsibilities under the FMLA, and did not designate any of Plaintiff's time away from work as FMLA leave. Instead, Ms. Crissey told Plaintiff that FMLA leave was "not necessary" because Plaintiff could work from home and use "as much PTO as needed."

42. CORA did not provide Plaintiff with FMLA paperwork until April 23, 2025, more than two weeks after she first requested it, and only after her orthopedic surgeon had removed her from work entirely.

43. Between April 7 and April 21, 2025, CORA expected Plaintiff to continue processing its payroll. Mr. Palmer, who had been hired three weeks earlier, had a previously planned vacation, and CORA expected Plaintiff to release the April 18, 2025 payroll in his absence. Plaintiff did so, working in one-hour intervals because of the pain and swelling in her arm and hand, and the payroll register was reviewed and approved by CORA's chain of command before release.

44. On April 21, 2025, Ms. Streets emailed Plaintiff to ask how she was "managing." Plaintiff responded that she had not been working at full capacity, that she had to stop whenever her arm became sore, and that "the main reason I was working was because Carey was out." Later that day, Plaintiff asked Ms. Streets whether there was paperwork her doctor needed to complete for FMLA.

45. On April 21, 2025, Plaintiff's orthopedic surgeon, Todd Schwartz, D.O., examined Plaintiff and advised her that any movement of her hand and arm would delay healing. Dr. Schwartz removed Plaintiff from work entirely and directed that her arm remain immobilized in a sling.

46. On April 22, 2025, Plaintiff informed Ms. Streets by email that her doctor was "pulling me out on FMLA for 3 to 4 weeks" and that she had called Ms. Crissey to let her know. Ms. Streets responded that she was glad Plaintiff was "taking this time for yourself" and that Ms. Crissey would "make sure you're all squared away as far as the FMLA documentation."

47. On April 23, 2025, Ms. Crissey sent Plaintiff CORA's Request for Leave of Absence form and a Department of Labor Certification of Health Care Provider form, and asked that the certification be returned by May 8, 2025. Plaintiff signed and returned CORA's leave request form on April 27, 2025. Dr. Schwartz completed and signed the certification on April 30, 2025, certifying that Plaintiff was incapacitated from April 6, 2025 through an estimated return date of May 19, 2025, that she was unable to perform her essential job functions during her recovery, and that she would require follow-up visits every two to three weeks and physical therapy.

48. CORA designated Plaintiff's absence as FMLA leave beginning April 22, 2025.

49. Plaintiff's requests for time off to recover from her injury were also requests for a reasonable accommodation of her disability within the meaning of the ADA and the PHRA.

50. Even after Plaintiff's leave began, CORA's Chief Financial Officer, Ms. Schepps, asked Plaintiff to guide Mr. Palmer through the payroll process by Microsoft Teams. Plaintiff did so. On April 30, 2025, Plaintiff circulated the pre-detail register for the May 2, 2025 payroll to CORA's Human Resources, finance, and leadership personnel, as she had done for every payroll, so that it could be reviewed and approved.

51. Within an hour, Ms. Streets responded that Plaintiff was "on a leave of absence," that CORA could not "have you working AND on LOA status," and that CORA "will be temporarily suspending your network access today." CORA then locked Plaintiff out of its email and payroll systems.

52. CORA's stated justification for the lockout, that Plaintiff should not be performing work while on leave, was contradicted by the fact that CORA's own Chief Financial Officer had requested Plaintiff's assistance.

53. The lockout cut Plaintiff off from her timesheet, her pay records, and the information she needed to pursue her short-term disability claim. Although Ms. Streets described the suspension as temporary, CORA never restored Plaintiff's access.

54. On May 8, 2025, Ms. Crissey emailed Plaintiff that she had not yet received the health care provider certification and that she had followed up with Dr. Schwartz's office. Ms. Crissey noted that Plaintiff had a follow-up appointment on May 13, 2025, and asked that, if the certification had not been received by then, Plaintiff have Dr. Schwartz complete it at that appointment.

55. On May 13, 2025, Dr. Schwartz examined Plaintiff and cleared her to return to work on Monday, May 19, 2025, consistent with the return date estimated in her FMLA certification. Dr. Schwartz referred Plaintiff to physical therapy two to three times per week.

56. On May 14, 2025, Plaintiff emailed Ms. Crissey that she had been cleared to return to work on Monday, that she had obtained copies of the paperwork, and that she needed her system access restored. Ms. Crissey replied, "I'm happy to hear this," and asked Plaintiff to send the completed certification and her return-to-work clearance.

57. On May 16, 2025, Ms. Crissey emailed Plaintiff again, stating that CORA was "happy to hear that you are cleared to return to work" but "can't have you return without the proper documentation," which CORA needed "at least two business days before you can return."

58. Plaintiff provided CORA with the completed certification and her return-to-work clearance.

59. On Monday, May 19, 2025, at 9:22 a.m., Plaintiff emailed Ms. Crissey, with copies to Ms. Streets and Mr. Palmer, that she was ready to start work that day but remained locked out of CORA's systems. CORA did not restore her access. Ms. Streets responded that she had not known Plaintiff was due to return and directed her to provide a return-to-work clearance. Plaintiff responded that her return date was set forth in her FMLA paperwork.

60. Unbeknownst to Plaintiff, CORA had by then terminated Ms. Crissey's employment, and no one at CORA had assumed responsibility for Plaintiff's leave or her return.

61. On Tuesday, May 20, 2025, Plaintiff reported to CORA's offices to return to work. As she arrived, Ms. Streets took her aside and told her that her position had been eliminated, effective immediately.

62. Ms. Streets told Plaintiff that the termination "had nothing to do with [her] job performance." Ms. Streets added that she "did not like the way this is being done."

63. Ms. Streets then asked Plaintiff whether she wanted CORA to communicate the termination to CORA's staff as a "retirement," and offered to hold a pizza party for her. Plaintiff told Ms. Streets that CORA could communicate it however it wished and declined the party.

64. Plaintiff received no advance notice of the elimination of her position and no written notice of layoff, and CORA made no effort to place her in another position, notwithstanding CORA's Handbook policy that "[i]n the event of a layoff, every effort will be made to place the employee(s) in a suitable position" and that, if none is available, "the employee(s) will receive written notice of layoff."

65. Plaintiff did not work another day for CORA after her return from FMLA leave. CORA set Plaintiff's termination date as on or about June 1, 2025, paid her for three additional weeks, and continued her health insurance through June 30, 2025. CORA then withheld the third week of that pay until Plaintiff returned her company laptop, and did not pay it until July 11, 2025.

66. On June 16, 2025, Ms. Schepps sent an email to CORA staff cancelling a "Retirement Farewell to Kathy." CORA thereby represented to its workforce that Plaintiff had retired, although CORA had in fact terminated her employment.

67. CORA has offered three different and inconsistent explanations for Plaintiff's termination.

68. First, CORA has contended that Plaintiff retired. Plaintiff did not retire. She never submitted a resignation or a retirement date, she expressly withdrew the May 1, 2025 date she had raised, she told CORA that she could not afford to retire, and she continued working, took protected leave, and sought to return to work. CORA itself asked Plaintiff on May 20, 2025

whether she wanted the termination "communicated as" a retirement. CORA would have had no reason to ask that question if Plaintiff had retired.

69. Second, CORA has contended that Plaintiff's position had become "completely superfluous." The payroll function Plaintiff performed did not become superfluous. CORA's approximately 550 employees continued to be paid every two weeks, and the work Plaintiff had performed was reassigned to Mr. Palmer, the substantially younger male employee CORA had hired weeks before her injury. Rather than eliminating the work Plaintiff performed, CORA reassigned that work to her replacement.

70. Third, in response to Plaintiff's EEOC Charge, CORA asserted for the first time that Plaintiff had exhibited "ongoing operational deficiencies" and "performance issues," including in March and April 2025, a period during which Plaintiff was processing payroll alone with a fractured shoulder while her newly hired manager was on vacation. CORA never documented any such deficiency, never disciplined or counseled Plaintiff for any such deficiency, and told Plaintiff at the time of her termination that it "had nothing to do with [her] job performance."

71. CORA's inconsistent, undocumented, and after-the-fact explanations are a pretext for discrimination and retaliation.

72. As a direct and proximate result of CORA's conduct, Plaintiff has suffered and continues to suffer lost wages and benefits, including salary, retirement plan contributions, and health insurance. Plaintiff has also suffered a loss of future earnings and earning capacity, as well as emotional distress, humiliation, embarrassment, anxiety, and loss of enjoyment of life. Plaintiff, who was sixty-five years old and still recovering from her injury, was required to seek new

employment without notice and under circumstances that CORA had described to its own workforce as a retirement.

73. CORA's conduct was willful, intentional, and undertaken with malice or reckless indifference to Plaintiff's federally protected rights.

**COUNT I**
**Family and Medical Leave Act, 29 U.S.C. § 2615(a)(1)**
**Interference**

74. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

75. At all relevant times, CORA was an "employer" within the meaning of 29 U.S.C. § 2611(4)(A), in that it employed fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year.

76. At all relevant times, Plaintiff was an "eligible employee" within the meaning of 29 U.S.C. § 2611(2). Plaintiff had been employed by CORA for more than twelve months, had worked at least 1,250 hours during the twelve-month period preceding her leave, and was employed at a worksite at which CORA employed fifty or more employees within seventy-five miles.

77. Plaintiff's fracture of her right proximal humerus and shoulder was a "serious health condition" within the meaning of 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.115, in that it involved a period of incapacity of more than three consecutive full calendar days together with continuing treatment by a health care provider, including multiple in-person visits, a regimen of prescription medication and immobilization, and a referral for physical therapy.

78. Plaintiff gave CORA timely and adequate notice of her need for leave for her own serious health condition on April 7, 2025, and again on April 21 and 22, 2025. 29 U.S.C. § 2612(e) and 29 C.F.R. § 825.303.

79. Plaintiff was entitled to up to twelve workweeks of leave under 29 U.S.C. § 2612(a)(1)(D), on an intermittent, reduced-schedule, or continuous basis as medically necessary, and, upon her return, to be restored to her position or to an equivalent position with equivalent pay, benefits, and other terms and conditions of employment. 29 U.S.C. § 2614(a)(1).

80. CORA interfered with, restrained, and denied the exercise of Plaintiff's rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1), by, among other things, the following acts and omissions.

(a) failing to provide Plaintiff with the eligibility notice, rights and responsibilities notice, and designation notice required by 29 C.F.R. § 825.300 within five business days of her April 7, 2025 request, and instead withholding FMLA paperwork for more than two weeks.

(b) discouraging Plaintiff from taking FMLA leave by telling her that leave was "not necessary" and that she should instead work from home and use her paid time off. 29 C.F.R. § 825.220(b).

(c) requiring Plaintiff to continue performing her job, including releasing an entire payroll, during a period in which she was entitled to be on protected leave for her serious health condition.

(d) requiring Plaintiff, through its Chief Financial Officer, to perform work during her designated FMLA leave, and then suspending her network access when she did so.

(e) failing to restore Plaintiff to her position or to an equivalent position upon her return from FMLA leave on May 19 and May 20, 2025, in violation of 29 U.S.C. § 2614(a)(1).

(f) terminating Plaintiff's employment.

81. Plaintiff was prejudiced by CORA's interference. She performed work while injured and in pain rather than recovering, she lost the protections of the FMLA, and she lost her position, wages, and benefits.

82. CORA's violations of the FMLA were not in good faith, and CORA did not have reasonable grounds to believe that its conduct was lawful. Plaintiff is therefore entitled to liquidated damages in an amount equal to her lost compensation and interest. 29 U.S.C. § 2617(a)(1)(A)(iii).

**COUNT II**
**Family and Medical Leave Act, 29 U.S.C. § 2615(a)(2)**
**Retaliation**

83. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

84. Plaintiff engaged in activity protected by the FMLA by requesting FMLA leave on April 7, 2025, by invoking FMLA leave on April 21 and 22, 2025, by taking FMLA leave from April 22, 2025 through May 18, 2025, and by seeking to return from FMLA leave on May 19 and 20, 2025.

85. CORA subjected Plaintiff to adverse employment actions during and immediately after her FMLA leave, including suspending her network access while she was on leave, failing to restore her access or her position upon her return, and terminating her employment on the first day she reported back to work.

86. A causal connection exists between Plaintiff's protected activity and the adverse actions. Plaintiff was locked out of CORA's systems eight days after her leave was designated and was terminated the day after she attempted to return, less than one month after her leave began. CORA has offered inconsistent explanations for the termination, acknowledged at the time that

the termination was unrelated to Plaintiff's performance, and has not identified any event during Plaintiff's leave, other than the leave itself, that prompted its decision to eliminate her position.

87. Plaintiff's use of FMLA leave was a negative and motivating factor in CORA's decisions to lock her out of its systems, to refuse to restore her, and to terminate her employment, in violation of 29 U.S.C. § 2615(a)(2) and 29 C.F.R. § 825.220(c).

88. CORA's violations were not in good faith, and CORA did not have reasonable grounds to believe that its conduct was lawful. Plaintiff is entitled to liquidated damages. 29 U.S.C. § 2617(a)(1)(A)(iii).

## COUNT III
**Americans with Disabilities Act, 42 U.S.C. § 12112**
**Disability Discrimination**

89. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

90. At all relevant times, Plaintiff was an individual with a "disability" within the meaning of 42 U.S.C. § 12102(1), for each of the following reasons.

(a) Plaintiff had a physical impairment, a fracture of her right proximal humerus and shoulder, that substantially limited one or more major life activities, including lifting, reaching, driving, performing manual tasks, typing, caring for herself, and sleeping, and the operation of her musculoskeletal system, 42 U.S.C. § 12102(1)(A), (2). An impairment lasting fewer than six months can be substantially limiting, 29 C.F.R. § 1630.2(j)(1)(ix), and Plaintiff's impairment has in any event produced chronic pain and residual limitation that continue to this day.

(b) Plaintiff had a record of such an impairment, as documented in the Emergency Department records, orthopedic records, and FMLA certification that Plaintiff provided to CORA. 42 U.S.C. § 12102(1)(B).

(c) CORA regarded Plaintiff as having such an impairment, in that CORA took adverse action against her because of an actual or perceived physical impairment that was not both transitory and minor. 42 U.S.C. § 12102(1)(C), (3).

91. At all relevant times, Plaintiff was a "qualified individual" within the meaning of 42 U.S.C. § 12111(8). She satisfied the skill, experience, and other job-related requirements of the Payroll Administrator position, had performed its essential functions for nearly three years, and, as of May 19, 2025, had been medically cleared to return to work and could perform the essential functions of her position with or without reasonable accommodation.

92. CORA discriminated against Plaintiff on the basis of her disability, her record of disability, and its perception of her as disabled, in violation of 42 U.S.C. § 12112(a), by locking her out of its systems, by refusing to restore her to her position, and by terminating her employment on the first day she returned from disability-related leave.

93. CORA further discriminated against Plaintiff, in violation of 42 U.S.C. § 12112(b)(5)(A), by failing to engage in good faith in the interactive process and by failing to provide reasonable accommodation when, on April 7, 2025, it rejected her request for intermittent leave as "not necessary" and required her to continue processing payroll while injured, and by terminating her rather than accommodating her return and her continuing need for physical therapy.

94. Plaintiff's disability was a determinative factor, and at minimum a motivating factor, in CORA's decisions.

95. CORA's stated reasons for Plaintiff's termination are false and pretextual.

96. CORA acted with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages under 42 U.S.C. § 1981a(b)(1).

**COUNT IV**
**Americans with Disabilities Act, 42 U.S.C. § 12203**
**Retaliation**

97. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

98. Plaintiff engaged in activity protected by the ADA by requesting reasonable accommodation for her disability, including intermittent leave on April 7, 2025, a continuous leave of absence on April 21 and 22, 2025, and restoration to her position upon her medical clearance in May 2025. A request for reasonable accommodation is protected activity under 42 U.S.C. § 12203(a).

99. CORA subjected Plaintiff to materially adverse actions following and because of her protected activity, including suspending her network access, refusing to restore her, and terminating her employment.

100. The close temporal proximity between Plaintiff's requests for accommodation and CORA's adverse actions, CORA's inconsistent explanations, and CORA's contemporaneous admission that the termination had nothing to do with Plaintiff's performance establish a causal connection between Plaintiff's protected activity and the adverse actions.

101. CORA's conduct violates 42 U.S.C. § 12203(a) and (b).

102. CORA acted with malice or with reckless indifference to Plaintiff's federally protected rights.

**COUNT V**
**Age Discrimination in Employment Act, 29 U.S.C. § 623(a)**
**Age Discrimination**

103. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

104. At all relevant times, Plaintiff was over the age of forty and within the class of persons protected by the ADEA. 29 U.S.C. § 631(a). Plaintiff was sixty-four years old when CORA announced that it would create a position above her that "could lead to the elimination" of her position, and sixty-five years old when CORA terminated her.

105. Plaintiff was qualified for her position and had performed it successfully for nearly three years without discipline.

106. CORA terminated Plaintiff's employment.

107. Plaintiff was replaced by Carey Palmer, who is substantially younger than Plaintiff and who assumed the payroll duties Plaintiff had performed. CORA did not consider Plaintiff for the Payroll Manager position, hired a substantially younger individual into it, and then purported to "eliminate" her position while transferring her duties to him.

108. CORA's characterization of the involuntary termination of its sixty-five-year-old Payroll Administrator as a "retirement," including by asking Plaintiff whether she wished it to be "communicated as" a retirement and by announcing a "Retirement Farewell" to its staff after it had terminated her, reflects age-based stereotyping and an assumption that an employee of Plaintiff's age would leave the workforce regardless of her stated intention to continue working.

109. Plaintiff's age was the but-for cause of CORA's decision to terminate her employment, in violation of 29 U.S.C. § 623(a)(1).

110. CORA's stated reasons for Plaintiff's termination are false and pretextual.

111. CORA's violation of the ADEA was willful, in that CORA knew or showed reckless disregard for whether its conduct was prohibited by the ADEA, entitling Plaintiff to liquidated damages under 29 U.S.C. § 626(b).

## COUNT VI
## Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)
## Sex Discrimination

112. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

113. Plaintiff is female and is a member of a class protected by Title VII.

114. Plaintiff was qualified for her position and had performed it successfully for nearly three years without discipline.

115. CORA terminated Plaintiff's employment and replaced her with a male employee, Mr. Palmer, who assumed the payroll duties she had performed. CORA created a new payroll position, did not consider Plaintiff for it, filled it with a man, and then eliminated Plaintiff's position while reassigning her duties to him.

116. Plaintiff's sex, alone and in combination with her age, was a motivating factor in CORA's decision to terminate her employment, in violation of 42 U.S.C. § 2000e-2(a)(1) and (m).

117. CORA's stated reasons for Plaintiff's termination are false and pretextual.

118. CORA acted with malice or with reckless indifference to Plaintiff's federally protected rights, entitling Plaintiff to punitive damages under 42 U.S.C. § 1981a(b)(1).

## COUNT VII
## Pennsylvania Human Relations Act, 43 P.S. § 955(a) and (d)
## Disability, Age, and Sex Discrimination and Retaliation

119. Plaintiff incorporates the foregoing paragraphs as though fully set forth herein.

120. At all relevant times, Plaintiff was an "employee" and CORA was an "employer" within the meaning of 43 P.S. § 954(b) and (c).

121. At all relevant times, Plaintiff was an individual with a "handicap or disability" within the meaning of 43 P.S. § 954(p.1), was over the age of forty, and was female.

122. CORA discriminated against Plaintiff with respect to the terms, conditions, and privileges of her employment, and discharged her, because of her disability, her age, and her sex, in violation of 43 P.S. § 955(a).

123. CORA retaliated against Plaintiff because she requested reasonable accommodation for her disability and because she opposed practices forbidden by the PHRA, in violation of 43 P.S. § 955(d).

124. The PHRA is construed consistently with its federal counterparts, and the facts set forth in Counts III through VI establish CORA's liability under the PHRA for the same reasons.

125. As a direct and proximate result of CORA's violations of the PHRA, Plaintiff has suffered the damages described above, and she is entitled to all legal and equitable relief available under 43 P.S. § 962(c)(3), including back pay, front pay, compensatory damages for emotional distress and humiliation, and reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kathleen M. Benz respectfully requests that this Court enter judgment in her favor and against Defendant CORA Services, Inc., and award the following relief.

(a) a declaration that Defendant's conduct violated the Family and Medical Leave Act, the Americans with Disabilities Act, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, and the Pennsylvania Human Relations Act.

(b) back pay, including lost wages, bonuses, retirement contributions, health insurance, and all other lost benefits of employment, with prejudgment interest.

(c) reinstatement to her former position or an equivalent position or, in lieu of reinstatement, front pay and the value of lost future benefits.

(d) liquidated damages under the Family and Medical Leave Act, 29 U.S.C. § 2617(a)(1)(A)(iii), and the Age Discrimination in Employment Act, 29 U.S.C. § 626(b).

(e) compensatory damages for emotional distress, humiliation, embarrassment, anxiety, and loss of enjoyment of life under the Americans with Disabilities Act, Title VII, and the Pennsylvania Human Relations Act.

(f) punitive damages under the Americans with Disabilities Act and Title VII, 42 U.S.C. § 1981a.

(g) reasonable attorney's fees, expert fees, and costs of suit under 29 U.S.C. § 2617(a)(3), 42 U.S.C. § 12205, 29 U.S.C. § 626(b), 42 U.S.C. § 2000e-5(k), and 43 P.S. § 962(c.2).

(h) prejudgment and post-judgment interest.

(i) such other and further legal and equitable relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**HENNESSY LAW, P.C.**

By: /s/ Brendan D. Hennessy
Brendan D. Hennessy, Esquire
PA Attorney I.D. No. 91831
101 Lindenwood Drive, Suite 225
Malvern, PA 19355
(267) 344-3600
bhennessy@hennessylawfirm.com

*Attorney for Plaintiff Kathleen M. Benz*

Dated: November 20, 2026